UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

STEWART TITLE GUARANTY
COMPANY,

Plaintiff,

v.

2485 CALLE DEL ORO, LLC *et al.*,

Defendants.

Case No.:  15-CV-2288-BAS(WVG)

**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR SANCTIONS, RECOMMENDING (1) TERMINATING SANCTIONS, (2) PAYMENT OF EXPENSES, AND (3) CRIMINAL CONTEMPT PROCEEDINGS**

**[Doc. No. 45.]**

Plaintiff brings this motion for terminating and monetary sanctions against Defendants Gettel and Conix VRC, LLC (collectively, "Defendants").  To understand this Court's recommendations, it is necessary to lay out the tortured history of this case, which the Court sets forth below and now summarizes.  The email correspondence between opposing counsel reveal that while Plaintiff has been exceptionally patient and cooperative since the beginning of the case, Defendants and their attorney, Joseph Sammartino ("Defense Counsel" or "Mr. Sammartino"), have delayed and ultimately completely abdicated their discovery obligations despite a Court Order compelling their compliance.  Plaintiff's counsel has tried mightily for months to obtain discovery informally.  Defense

Counsel continuously promised Plaintiff's counsel that Defendants would provide the requested discovery informally and lulled Plaintiff's counsel into believing that production was imminent. During this process, Plaintiff's counsel's correspondence were often outright ignored for days or weeks without a response. It was only when it became apparent that Defendants had no intention of following through on their promises that Plaintiff was left with no other option than to engage the Court and propound formal discovery. However, even the authority of the Court proved insufficient to prod Defendants into complying with their discovery responsibilities, and they ignored a Court Order compelling them to comply. To date, Defendants and Defense Counsel have provided *no* discovery to Plaintiff[1] and have violated multiple Court Orders. Then, when faced with the prospect of case-dispositive and monetary sanctions, they failed to file *any* response to the instant motion for sanctions and failed to appear at the sanctions hearing.

Left with no alternative in light of Defendants' and Mr. Sammartino's complete failure to provide discovery, repeated violations of the Court's Orders, and failure to appear at the sanctions hearing, this Court recommends[2] (1) granting Plaintiff's motion for terminating sanctions, (2) striking Defendants Gettel and Conix VRC, LLC's Answers, (3) entering default judgment and judgment in favor of Plaintiff, and (4) ordering $6,275 in payment of expenses to be paid jointly and severally by Defendants and Defense Counsel. Additionally, the undersigned Magistrate Judge certifies the facts below pursuant to 28 U.S.C. § 636(e)(6), recommends criminal contempt proceedings against Mr. Sammartino, and reporting to the State Bar of California.

---

[1] Beyond providing initial disclosures under Federal Rule of Civil Procedure 26(a)(1).

[2] Because this Court finds terminating—*i.e.*, dispositive—sanctions are appropriate, the undersigned may only issue a report and recommendation for the district judge's consideration. *Bastidas v. Chappell*, 791 F.3d 1155, 1159 (9th Cir. 2015).

# I.    BACKGROUND

Plaintiff Stewart Title filed its complaint on October 13, 2015, alleging fraud, RICO violations, negligence and other claims against Defendants 2485 Calle del Oro, LLC, Courtland Gettel, Jeffrey Greenberg, Conix VRC, LLC, Kathryn Nighswander, and Lynette Moreno.[3]  (Doc. No. 1.)[4]  Defendants Gettel, Nighswander, and Conix VRC, LLC all filed answers on February 10, 2016.  (Doc. Nos. 16-18.)[5]

Defendant Gettel, who has pleaded guilty to his involvement, and other co-conspirators were involved in a criminal scheme to defraud private real estate lenders out of tens of millions of dollars.  (16-CR-1099-WQH, Doc. Nos. 10-11.)  Plaintiff was just one of eight victims who was defrauded out of millions of dollars, all of whom have now filed petitions seeking restitution from Gettel and his co-conspirators of the $33.6 million swindled from them.  (*Id.*, Doc. Nos. 22, 24-26, 28, 29.)  The United States supports most of the victims' efforts to recoup their losses.  (*Id.*, Doc. No. 41.)  Gettel has agreed to provide restitution to his victims and forfeit his ill-gotten gains.  (*Id.*, Doc. Nos. 10, 12.)

---

[3] After being served with summons, defendants 2485 Calle del Oro, LLC, Jeffry Greenberg, and Lynette Moreno failed to respond.  The Court ordered that a motion for default judgment may be filed after the case is resolved against the non-defaulting defendants. (Doc. No. 25.)

[4] All pin-cite page references to documents filed on the Court's CM/ECF system refer to the page number electronically-generated by the system, not to the document's native pagination.

[5] Kathryn Nighswander has since filed for bankruptcy, which resulted in an automatic stay of these proceedings against her.  (*See* Doc. No. 42-1 at n.1.)  Additionally, defendants Greenberg and Gettel have been indicted on fraud-related charges in the Southern District of California and District of Arizona.  (*See* S.D. Cal. Nos. 16-CR-1076-WQH, 16-CR-1077-WQH, 16-CR-1099-WQH; D. Ariz. No. 16-CR-1064-CKJ-BGM.)  Sentencing for Gettel is currently set for September 25, 2017. (No. 16-CR-1099-WQH, Doc. No. 57.) Sentencing for Greenberg is currently set for October 2, 2017 in two cases, which include the case transferred from the District of Arizona by consent. (No. 16-CR-1076-WQH, Doc. No. 30; No. 16-CR-1077-WQH, Doc. No. 24.)

As Plaintiff stated in a July 1, 2016, joint status report in the instant case, "[i]f Stewart determines that recovery from these trusts is not viable, Stewart will consider dismissing this action and seek recovery through the [criminal] restitution orders." (Doc. No. 53 at 2.) However, there are multiple victims all fighting for some pro-rata share of any funds the United States may be able to obtain through forfeiture and off-sets from the sale of any of the involved properties. Accordingly, Plaintiff's prospect of obtaining full recovery is slim.

In the instant civil case, the Magistrate Judge originally assigned to the case ordered that an Early Neutral Evaluation ("ENE") occur on May 25, 2016. (Doc. No. 19.) The parties also were instructed to make initial disclosures on May 4th and lodge a joint discovery plan on May 11th, which they did. (*Id.*; *see also* Doc. No. 26.)

However, an ENE was not held. After receiving and considering the parties' ENE statements, the prior Magistrate Judge converted the ENE to an attorneys-only telephonic status conference. (Doc. No. 27.) The Magistrate Judge ordered a joint status report be lodged on July 1, 2016 before the status conference that was to be held on July 8, 2016. (Doc. No. 28.) In anticipation of the report and status call, on June 29, 2016, Plaintiff spoke with Mr. Sammartino about Defendants providing informal discovery regarding the financial status of Defendant Gettel's trust accounts. This call was memorialized in an email the same day at 3:48 p.m. (Doc. No. 42-3, Ex. B.) Less than two hours later, Defense Counsel responded via email that "[his] clients [were] willing to provide the information requested below." (*Id.*) The informal discovery Defense Counsel agreed to produce included information about the financial status of the trusts related to Gettel's various entities, including "copies of the trusts, the identity of the banks that the trusts use, bank account numbers, a list of the entities they have funded and the amounts that they funded, and any bank statements for the trusts' accounts or other documents regarding the trusts' financial situations." (*Id.*)

The parties lodged their joint status report on July 1, 2016, representing to the Magistrate Judge that they were working well together and that Defendants had agreed to provide documents informally to Plaintiff. (Doc. No. 53 at 2-3.) The parties requested a

30-day continuance of the July 8, 2016 status conference. (*Id.*) The Court granted the request based upon the positive representations made by the parties, set the next status conference for August 8, 2016, and ordered that another joint status report be lodged on August 1, 2016. (Doc. No. 29.) With additional time granted, Plaintiff emailed Mr. Sammartino on July 8, 2016 for an update on when the informal discovery would be provided. (Doc. No. 42-3, Ex. B.) Defense Counsel did not respond. Plaintiff again emailed Defense Counsel on July 14, 2016 and asked for the same information. (*Id.*) Mr. Sammartino briefly responded that same day after his six-day silence, stating only that "[he] was working on getting it for [Plaintiff]." Defense Counsel provided no explanation of what was being done to acquire the information or when he expected to produce it to Plaintiff. Then radio silence ensued for eight days. When he failed to produce the promised informal discovery, Plaintiff again emailed him on July 22, 2016, asking for another status update. (*Id.*) Mr. Sammartino again did not respond.

On August 1, 2016, the parties owed the Magistrate Judge another joint status report, but Defense Counsel's last communication to Plaintiff occurred on July 14, 2016, over two weeks earlier. Plaintiff reached out to Defense Counsel via email on August 1, 2016, at 10:18 a.m., and addressed two points: that Plaintiff still had not received the informal discovery and referenced an attached document, which appears to have been a draft of the joint status report due that same day. (Doc. No. 42-3, Ex. C.) Three minutes later, Mr. Sammartino replied via email stating that he had not responded to Plaintiff's earlier email because his wife had been in the hospital,[6] reassured Plaintiff that he continued to work on obtaining the informal discovery, and promised he would produce it as soon as he received it. (*Id.*) In fact, Defense Counsel represented in this email that his clients were eager to resolve the matter and that "requests have been made to the appropriate banks and financial institutions." (*Id.*) He also suggested for the first time that the delay may be due to the

---

[6] Defense Counsel did not provide any details about the nature or length of the hospital stay.

banks not responding to his requests. (*Id.*) In an email exchange later that same day, Defense Counsel suggested to Plaintiff that the joint status report ought to ask for a 45-day—rather than a 30-day—continuance to allow him to represent to the Court that he had "done everything possible" to get the requested documents. (*Id.*) Mr. Sammartino suggested that he could "most likely get [] a declaration or affidavit from Ms. Nighswander that there is nothing in any of the trust accounts." (*Id.*) As far as this Court knows, Defense Counsel never produced a declaration from Nighswander nor an explanation for its non-production.[7]

The joint status report was lodged on August 1, 2016 as directed, and while it was still positive in tone, the report indicated only that Defense Counsel was continuing his efforts to obtain discovery without providing a description of the efforts being made. (Doc. No. 53 at 6 (paragraph 3).) The original Magistrate Judge granted the parties' request for a 45-day continuance and scheduled the next status report to be lodged on September 13, 2016 with the status conference to be held on September 22, 2016. (Doc. No. 30.)

On September 12, 2016, the day before the next joint status report was due, Plaintiff sent an email to Defense Counsel. (Doc. No. 42-3, Ex. D.) In this email, Plaintiff lamented that no documents had yet been produced and surmised that Defense Counsel had not received them yet. Less than an hour later, Mr. Sammartino responded via email offering an explanation for the delay but confirming that he had received nothing and was "still working on it." (*Id.*) The joint status report, which was nearly a carbon copy of the previous one, was lodged on September 13, 2016. (Doc. No. 53 at 7-10.) It offered an explanation for the delay in producing the documents to Plaintiff, reiterated that Mr. Sammartino was continuing his efforts, and again requested a 45-day continuance. (*Id.*)

---

[7] At the sanctions hearing, Plaintiff's counsel informed the Court that Plaintiff had received *no* discovery, which the Court infers includes the Nighswander declaration. However, it appears Defendants did engage in the exchange of initial disclosures under Federal Rule of Civil Procedure 26(a)(1) but then failed to further participate in discovery after they did so.

The original Magistrate Judge granted the third continuance request and set the next status conference for November 14, 2016, with a joint status report due by October 31, 2016. (Doc. No. 31.)

Weeks passed with no production from Defendants. Consistent with past practice, Plaintiff's counsel emailed Mr. Sammartino on October 28, 2016, seeking an update on his progress on producing the promised discovery. (Doc. No. 42-3, Ex. E.) Defense Counsel responded three days later, on October 31, 2016, stating that he "did not have much of an update. I am not sure how to show that there are no bank accounts for certain entities. I am supposed to be close on the ones that had accounts." (*Id.*) The joint status report was lodged on time and reflected the status as described in Defense Counsel's email. (*See* Doc. No. 53 at 11-14.) For the fourth time, the parties requested a 30-day continuance, but this time the original Magistrate Judge denied the request and ordered the parties to file an expedited discovery schedule by November 10, 2016. (Doc. No. 32.) The next status conference was set for November 14, 2016. (*Id.*)

The parties' Expedited Joint Discovery Plan, lodged on November 11, 2016, reflected that they understood the necessity to move the case along with alacrity from that point forward. In the discovery plan, the parties agreed that discovery responses would be provided within 20 days of service rather than the customary 30 days allowed by the rules. (Doc. No. 53 at 19.) The discovery plan also alerted the original Magistrate Judge to several privilege issues that could cause a delay in obtaining the discovery, not the least of which was Plaintiff's belief that Mr. Sammartino might need to be deposed based on his involvement in providing a legal opinion letter which was relied upon by Plaintiff. (*Id.* at 24.) The parties believed that all of the discovery could be completed within four months. (*Id.* at 19.)

With the joint discovery plan in mind, the original Magistrate Judge issued a Case Management Order on November 18, 2016, setting March 7, 2017, as the deadline for completion of fact discovery. (Doc. No. 34.) However, Plaintiff did not spring into immediate action with formal discovery. Rather, Plaintiff again attempted to informally

obtain information about the trust accounts for purposes of serving subpoenas on the financial institutions. In a series of emails and voice messages in January 2017, Plaintiff yet again pressed Defense Counsel to turn over this information. (Doc. No. 42-3, Ex. G.) On January 19, 2017, Mr. Sammartino responded via email that he wanted to consult with his clients again but promised that "[Plaintiff] should have everything by tomorrow at the latest." (*Id.*) "Tomorrow" passed with no production, and Plaintiff's email inquiry to Mr. Sammartino on January 20, 2017 went unanswered. (*Id.*; Doc. No. 45-1 at 9.)

After months of seeking discovery informally, Plaintiff finally gave up. Formal discovery commenced when Plaintiff served Requests for Production of Documents and Interrogatories on January 25, 2017. (Doc. No. 42-3, Exs. H-M.) Pursuant to the expedited discovery plan, responses were due no later than February 14, 2017. (Sanctions Motion, Doc. No. 45-1 at 9.) Once in January shortly after service and then again in early February 2017, Plaintiff attempted via email to discuss with Defense Counsel the formal discovery Plaintiff had propounded. (*Id.*) Mr. Sammartino responded on January 30, 2017 that he was in a meeting and would call when he was finished. (Doc. No. 42-3, Ex. N.) He never called as promised. (Doc. No. 45-1 at 10.)

In the morning on February 14, 2017—the day Defendants' discovery responses were due—Plaintiff left Defense Counsel a voicemail message and sent him an email requesting that the discovery be provided electronically. (Doc. No. 42-3, Ex. O.) Plaintiff did not receive discovery responses, and Mr. Sammartino did not return Plaintiff's voicemail or email. (Doc. No. 45-1 at 10.) After a week of not hearing from Defense Counsel, Plaintiff again reached out to make contact with him. In a series of emails and voicemail messages on February 21, 23, and 24, Plaintiff implored Defense Counsel to respond to discuss the delay in providing the discovery. (*Id.*) Plaintiff's efforts were met with complete silence. (Doc. No. 45-1 at 10.)

Plaintiff contacted the original Magistrate Judge on February 24, 2017 about the situation and Mr. Sammartino's failure to meet and confer. (Doc. No. 36.) The Court set a telephonic status call for February 28, 2017. (*Id.*) Although Defense Counsel had been

incommunicado with Plaintiff, he participated in the status call and explained that he was out of the country and did not have access to his email. (Doc. No. 42-3, Ex. P.) The Court granted the parties' request to extend fact discovery to June 19, 2017. (Doc. No. 39.) During the status call, Defense Counsel represented that discovery responses would be provided within two weeks (Doc. Nos. 40; 42-3, Ex. Q), but as before, no responses were provided despite Defense Counsel's promise to "continue working on all of this asap to meet the new deadlines." (Doc. No. 42-3, Ex. Q.)

Two weeks later, on March 14, 2017, Plaintiff emailed Mr. Sammartino to again request that the responses be provided electronically. (Doc. No. 42-3, Ex. R.) When no responses came, Plaintiff persistently tried to reach Defense Counsel via telephone and email several more times on March 17, 20, and 21. (Doc. No. 42-3, Ex. S.) Defense Counsel did not respond to any of Plaintiff's correspondence. (Doc. No. 45-1 at 11.) Once again, on March 22, 2017, Plaintiff notified the original Magistrate Judge of the failure to provide discovery and requested another status conference. (Doc. Nos. 40; 42-3, Ex. S.) A status conference was set for March 24, 2017 at 10:00 a.m. (Doc. No. 40.)

On March 23, 2017, at 7:27 p.m., in an email to Plaintiff's counsel, Mr. Sammartino provided some explanations why he had been unable to provide discovery and advised that he would not be available for the status call the next morning with the original Magistrate Judge. (Doc. No. 42-3, Ex. T.) Rather than personally informing the Court or formally requesting to move the status call to accommodate his conflicting schedule, Defense Counsel chose instead to fail to appear, have Plaintiff explain to the Court the reason for his absence, and have Plaintiff convey the information in the email. (*Id.*) The status conference was held as scheduled notwithstanding Mr. Sammartino's failure to appear. (Doc. No. 41.) The Court authorized Plaintiff to file a motion to compel discovery by March 31, 2017, which it did, but the motion also sought sanctions that the Court had not authorized. (*Id.*; Doc. No. 42.) Neither Defense Counsel nor his clients filed any opposition to the motion to compel, which was then granted by the Court. (Doc. No. 44.)

Additionally, the original Magistrate Judge authorized Plaintiff to file a motion for sanctions. That motion is presently pending before the Court. (Doc. No. 45.)

The original Magistrate Judge then recused on May 8, 2017, and the undersigned was randomly assigned to the case. (Doc. No. 46.) After reviewing the history of the litigation and its present posture, on May 19, 2017, this Court ordered further briefing on the pending sanctions motion and set a hearing for July 14, 2017 at 2:00 p.m. (Doc. No. 47.) In that Order, all Defendants and Mr. Sammartino were expressly ordered to appear at the hearing. Defense Counsel and his clients also were ordered to file a response to the sanctions motion by June 16, 2017. As of the date of this Report and Recommendation, Defendants and Defense Counsel have filed neither a response nor even a request to file an untimely response. Moreover, Defendants and Mr. Sammartino all failed to appear at the sanctions hearing.[8] Attorney Peter Scott appeared at the hearing for Plaintiff and provided additional information sought by the Court. (*See* Hrg. Tr., Doc. No. 52.)

## II.    DISCUSSION

Never before has this Court experienced an attorney or party who so steadfastly failed to meaningfully participate in the discovery process after multiple reassurances to opposing counsel and to the Court and a formal Order compelling compliance. Where, as here, there is such a complete and profound failure to cooperate, this Court is left with no option than to recommend terminating sanctions against Defendants Gettel and Conix VRC, LLC.[9] Additionally, this Court also sees no other option than to recommend an

---

[8] At least Defendant Gettel can excuse his failure to appear at the sanctions hearing with his current incarceration in federal jail. However, the Court does not know why Defense Counsel failed to appear, and Defense Counsel has provided no justification or reason—plausible or otherwise—for any of his conduct in this case.

[9] To be clear, this Court is not recommending terminating sanctions against Kathryn Nighswander given her status in bankruptcy nor has Plaintiff moved for terminating sanctions against her. (Doc. No. 45-1.) Due to Nighswander's bankruptcy, Plaintiff did not move to compel her discovery responses. (Doc. No. 42-1 at 5.) Thus, unlike Gettel

award of expenses to be jointly and severally paid by Defendants and Mr. Sammartino, initiation of criminal contempt proceedings against Mr. Sammartino, and reporting to the State Bar of California.

## A.     Terminating Sanctions Against Defendants Gettel and Conix VRC, LLC

### 1.     Legal Standard

Broad sanctions may be imposed against a person or party for failure to obey a prior court order compelling discovery.  Fed. R. Civ. P. 37(b)(2)(A).  The types of sanctions available following a party's failure to comply with such an order are diverse and include striking pleadings in whole or in part, dismissing the action or proceeding in whole or in part, and rendering a default judgment against a disobedient party.  Fed. R. Civ. P. 37(b)(2)(A)(iii), (v), (vi).  Which sanction is most appropriate under the circumstances is within the Court's discretion, and the Court is not bound to impose the least serious sanction possible.  *See Chrysler Corp. v. Carey*, 186 F.3d 1016, 1022 (8th Cir. 1999) ("The district court is not constrained to impose the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances.").

"Where the sanction results in default, the sanctioned party's violations must be due to the willfulness, bad faith, or fault of the party." *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1169 (9th Cir. 2012) (internal quotations and citation omitted).  "[D]isobedient conduct not shown to be outside the control of the litigant is all that is required to demonstrate willfulness, bad faith, or fault." *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993) (internal quotations and citation omitted); *see also In re: Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1233 (9th Cir. 2006). Even if disobedience of the court order is the fault of the party's attorney alone, terminating sanctions may nonetheless be appropriate.  *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633

and Conix VRC, LLC, Nighswander is not in violation of a Court Order compelling production of discovery.  And as noted above, the Court will address the non-responding defendants at a later date.  *See*, *supra*, n.3.

(1962); *W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1523 (9th Cir. 1990) ("A plaintiff cannot avoid dismissal by arguing that he or she is an innocent party who will be made to suffer for the errors of his or her attorney. The established principle is that the faults and defaults of the attorney may be imputed to, and their consequences visited upon, his or her client.") (citations omitted); *see Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92 (1990) (service on attorney constitutes notice to clients); *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002) ("Under this circuit's precedent, a client is ordinarily chargeable with his counsel's negligent acts.").

Once the Court finds that discovery violations are the result of willfulness, bad faith, or are the fault of the party, it must weigh five factors in determining whether to impose terminating sanctions: (1) public interest in expeditious resolution of litigation; (2) the court's need to manage its own docket; (3) prejudice to other parties from the discovery violations; (4) public policy favoring disposition of cases on the merits; and (5) whether less drastic sanctions are available and would provide effective deterrence for the particular violation. *Hester*, 687 F.3d at 1169 (terminating sanctions proper absent prior imposition of lesser sanctions where party's willful bad conduct showed lesser sanctions would be "pointless"); *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011) (internal quotations and citation omitted). Where, as here, "a court order is violated, factors 1 and 2 support sanctions and 4 cuts against case-dispositive sanctions, so 3 and 5, prejudice and availability of less drastic sanctions, are decisive." *Valley Eng'rs v. Electric Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998) (citation omitted).

## 2. Discussion

### a. Willfulness, Bad Faith, and Fault

The continuous violations of Defendants' discovery obligations in this case—which ultimately culminated in their violation of a Court Order compelling production of discovery—were willful, in bad faith, and the fault of Defendants and Mr. Sammartino. After months of promises to Plaintiff and the Court that informal discovery was forthcoming, Defendants failed to deliver any discovery. Then, after Plaintiff commenced

formal discovery, Defendants—through Defense Counsel—continued their malfeasance and failed to meet production deadlines and ultimately completely failed to produce any formal discovery responses. Even after the Court formally ordered Defendants to produce discovery, they—through Defense Counsel—failed to comply with a direct Court Order to do so. Throughout this time and to the present day, they have provided no justification—concrete or otherwise—for this abject failure, which was in direct conflict with Mr. Sammartino's continuing reassurances that he had sought the information and it was forthcoming soon after his representations were made.

As early as June 29, 2016, Defense Counsel promised to provide the pertinent documents requested informally by Plaintiff. (Doc. No. 42-3, Ex. B.) His promises were made not only to Plaintiff but also to the original Magistrate Judge. Defense Counsel repeatedly represented that his clients were willing to disclose the trust and other bank documents.[10] These representations over the course of the last twelve months left Plaintiff and the Court with the very reasonable impression that Defendants and Mr. Sammartino were actively working to comply with Plaintiff's requests. Now, over a year later, after numerous informal requests, formal discovery requests, and multiple extensions of time to respond, Defendants have produced nothing. It may be true, as Defense Counsel seems to have suggested in one of his emails to Plaintiff's counsel, that he and his clients were to some extent reliant upon banks and other financial institutions to provide the documents requested. Perhaps these matters were not a high priority for the banks and some delay was to be expected—a point noted by Defense Counsel in his August 1, 2016, email when he ensured that "the requests have been made to the appropriate banks and financial

---

[10] Doc. No. 42-3, Ex. B ("I am working on getting [the informal discovery] for you."); Ex. C ("[R]equests have been made to the appropriate banks and financial institutions" and "I can tell the court that I've done everything possible to get the financial documents you are requesting."); Ex. D ("I have not received anything; but I am still working on it"); Ex. Q ("Your email is accurate, and we are on the same page. I will continue working on all of this asap to meet the new deadlines.").

institutions." (Doc. No. 42-3, Ex. C.) But it strains credulity to believe that after nearly a year, the banks and financial institutions still have not provided the information requested back in mid-2016.

There can only be two explanations for Defendants' failure to produce the discovery. A request for bank and trust records was never made in the first place. Or, in the alternative, Defense Counsel and his clients failed to diligently follow up on the requests. If the first is true, a serious ethical breach occurred here given Mr. Sammartino's multiple representations to the Court. If the latter is true, then Defense Counsel and his clients are also to blame for not following up on the banks' lackadaisical efforts. The Court does not known which scenario is the case since Defendants and their counsel failed to explain themselves in these proceedings despite being afforded at least three opportunities to do so. First, they failed to respond to Plaintiff's motion to compel discovery. Next, they ignored a clearly-established briefing schedule and failed to file any response to Plaintiff's sanctions motion. And then, on the day when they would have had one final opportunity to provide the Court *some* explanation for any of their conduct in this case, they failed to appear for the sanctions hearing. Defendants and Defense Counsel did not deign to defend themselves or comply with the Court's orders even when faced with the great specter of severe sanctions. What the Court is left with, then, is a history of broken promises that Defendants were diligently pursuing and would produce discovery. Giving Mr. Sammartino the benefit of the doubt that he had actually requested information and documents from the financial institutions, in the end, Defendants failed to produce any such discovery. Perhaps a valid reason for the non-production exists. Perhaps Defendants and Defense Counsel acted in good faith. However, the Court is left in the dark given that Defendants simply failed to produce the discovery after extensive promises without giving the Court any reason to believe that this failure was due to anything besides their deliberate choice not comply with their obligations and a direct Court Order. At this point, it appears Defendants and their counsel have capitulated and completely abandoned this case.

Defendants' continuing reassurances and representations to the Court, combined with the fact that no discovery was ever produced and their apparent abandonment of this case, amount to bad faith and willful violation of a Court Order compelling compliance with discovery obligations. Such willfulness can be nothing other than Defendants' and Defense Counsel's collective fault. This is the only plausible conclusion the Court can conjure given the dearth of any evidence to the contrary. The Court has no evidence before it to find otherwise. Given this conclusion that the violation of the Court Order compelling discovery responses was willful, in bad faith, and Defendants' fault, default is an appropriate sanction. This Court now turns to weigh the five factors related to imposition of this case-dispositive sanction. *See Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1169 (9th Cir. 2012).

### b. The Public's Interest in Expeditious Resolution Favors Terminating Sanctions

Twenty-one months into this litigation, the case remains floundering in initial stages of discovery. Where other cases would have either proceeded to trial or at the very least would have been approaching the dispositive motions filing deadline by now, this case has gone nowhere due to Defendants' and Mr. Sammartino's delay and failure to comply with their most basic discovery obligations. As attorney Peters informed the Court at the sanctions hearing, Plaintiff has received no discovery in this case. (Hrg. Tr., Doc. No. 52 at 8-9.) Were this case to proceed forward, the parties would be starting litigation in its initial stages with no expectation that Defendants' future discovery compliance would be any better than in the past. This would further delay a case that ordinarily should have been resolved or at least close to resolution by now. Such a result would frustrate the public's interest in expeditious resolution of cases and controversies. Indeed, the progress of this case to date has already frustrated this public interest. This factor weighs in favor of terminating sanctions. *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011).

### c. The Court's Need to Manage its Docket Favors Terminating Sanctions

This case certainly has hindered the Court's management of its docket, as the Court has been required to engage in more extensive supervision of this matter than should have been necessary. Defendants' and Defense Counsel's conduct necessitated the prior Magistrate Judge's involvement on multiple occasions to hold status conferences and supervise their compliance with the most basic obligation to provide discovery. Their continued failure to comply necessitated entertaining a motion to compel. And their further steadfast failure to comply has now necessitated a formal sanctions motion before this Court, a hearing, this Report and Recommendation, and an eventual hearing and final Order by the District Judge. This case has also been assigned to four different district and magistrate judges. All of this, of course, has transpired while the Court manages its heavy civil and criminal caseloads. None of this burden on the Court's collective docket was necessary and could have been easily avoided by Defendants and Defense Counsel simply following through with their promises to Plaintiff's counsel and to this Court by complying with their discovery obligations. However, Defendants' and their counsel's extended delays and broken promises have burdened the Court's management of its docket in one of the busiest districts in the country. This factor weighs in favor of terminating sanctions. *Dreith*, 648 F.3d at 788.

### d. Plaintiff Has Suffered Substantial Prejudice From Defendants' Discovery Violations

A party suffers prejudice if the opposing party's actions impair its "ability to go to trial or threaten to interfere with the rightful decision of the case." *Adriana Int'l Corp. v. Lewis & Co.*, 913 F.2d 1406, 1412 (9th Cir. 1990); *see also Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007) (upholding default sanctions in plaintiff's favor where defendant and his attorney knowingly deceived and acted in bad faith). While "[d]elay alone has been held to be insufficient prejudice[,] . . . [f]ailure to produce documents as ordered, . . . is considered sufficient prejudice." *Adriana*

*Int'l Corp.*, 913 F.2d at 1412 (citations omitted). "In deciding whether to impose case-dispositive sanctions, the most critical factor is not merely delay or docket management concerns, but truth." *Conn. Gen. Life Ins. Co.*, 482 F.3d at 1097 (9th Cir. 2007); *see also Valley Eng'rs v. Electric Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998) ("What is most critical for case-dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the discovery violations threaten to interfere with the rightful decision of the case.") (internal quotations and citation omitted).

Here, Defendants' and their counsel's collective bad conduct has caused Plaintiff prejudice, irreparable harm, has frustrated the pursuit of truth, and ultimately threatens to interfere with the rightful decision of this case. The continued failure to produce any discovery has completely prevented Plaintiff from progressing beyond the initial stages of this case. The case has been at a standstill for an extended period of time while Plaintiff has patiently awaited discovery promised to be produced on multiple occasions. When Mr. Sammartino repeatedly broke his promises, Plaintiff's counsel was reduced to essentially begging Defense Counsel to comply with his past promises. Yet, Plaintiff has received nothing despite months of reassurances of imminent production, representations of the same to the Court, and a formal Order compelling production. All of Plaintiff's efforts have been to no avail, and the litigation posture Plaintiff finds itself in now is no different than before it embarked on this long, arduous journey. With no information to litigate its claims, Plaintiff cannot notice and effectively take depositions. Plaintiff cannot file dispositive motions. Plaintiff certainly cannot effectively take the case to trial. Plaintiff's severely compromised litigation posture now is solely the result of Defendants' and Mr. Sammartino's discovery violations, which have interfered and will continue to interfere with the search for truth and the ultimate rightful decision of the case.

Moreover, given Defendants' and Defense Counsel's recalcitrant and obstructionist conduct to date, they are highly likely to continue this conduct in the future. This Court is doubtful that they will fully comply—or comply at all—with discovery obligations, and it would not be beyond comprehension to believe that they may even withhold certain

15-CV-2288-BAS(WVG)

damaging discovery to which Plaintiff is rightfully entitled. In such a situation, Plaintiff would highly likely continue to suffer prejudice, and the search for the full truth and rightful resolution of this case would certainly be obstructed. *See generally Conn. Gen. Life Ins. Co.*, 482 F.3d at 1097 ("Where a party so damages the integrity of the discovery process that there can never be assurance of proceeding on the true facts, a case dispositive sanction may be appropriate.") (internal quotations and citation omitted).

This case was filed in 2015 alleging conduct that dates back to July 15, 2014 and the loss of $1.8 million. To date, Plaintiff has not received any discovery and without it, Plaintiff cannot possibly prosecute its claims. "[E]very litigant has a capacious right to another's proof." Amir Schachmurove, *Policing Boilerplate: Reckoning and Reforming Rule 34's Popular—yet Problematic—Construction*, 37 N. Ill. U. L. Rev. 205, 251 (2017). Without Defendants' proof, Plaintiff is dead in the water. Defendants and their counsel have made it impossible for Plaintiff, despite Plaintiff counsel's continued valiant and patient efforts, to adequately prepare itself for trial or any other proceedings in this case. *See Dreith*, 648 F.3d at 788. This factor heavily favors terminating sanctions.

> ### e. Although Public Policy Favors Resolution on the Merits, in this Case, There is No Indication That Policy Can be Achieved

The Court acknowledges that the "fourth factor, resolution of cases on their merits, *always* weighs against dismissal." *Id.* (citation omitted) (emphasis added). Accordingly, the Court should so find in accordance with binding authority.

The foregoing notwithstanding, this Court is rather skeptical that this public policy would be satisfied were this case to continue. In fact, based on the history of this case, it is quite clear this will not happen due to Defendants' steadfast unwillingness to participate. Filed in 2015, this case stalled right out of the gate and has not proceeded past the most basic stage of holding an Early Neutral Evaluation. And when the stakes were at the highest for Defendants and their counsel, they failed to participate in these sanctions proceedings in their own defense. Thus, going forward, the Court has no confidence that Defendants or Mr. Sammartino will participate in good faith in any manner such that the

15-CV-2288-BAS(WVG)

case can be decided on the merits and allow the public policy to be honored. The foregoing observations notwithstanding, this factor weighs against terminating sanctions, but just barely in light of the Court's concerns.

### f.    Less Drastic Sanctions Would Have No Impact in this Case

Although there are a variety of lesser sanctions available to the Court to address Defendants' conduct, the only one this Court believes is appropriate given the egregious facts and circumstances of this case is "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(vi). Only this sanction will adequately address the complete abdication of Defendants' and Mr. Sammartino's responsibilities in this case.

From what the Court has seen and experienced, monetary sanctions alone would do nothing to ameliorate the prejudice Plaintiff has suffered to date, would not ensure Plaintiff would not continue to suffer prejudice, and would not ensure that Defendants and their counsel will fully comply with their obligations in the future.[11] Indeed, the specter of terminating sanctions and an award of expenses has done nothing to spur Defendants and Defense Counsel into action. If these serious proceedings had no impact on them, mere monetary sanctions alone stand no chance of motivating them.

Staying the proceedings until the order is obeyed, as Rule 37(b)(2)(A)(iv) allows, would also be ineffective here. For months, Defense Counsel repeatedly promised that discovery responses and information would be produced imminently and strung Plaintiff and the Court along as a result. Promise after promise was broken, and the Court's Order compelling compliance went ignored. Defendants' and their counsel's course of conduct in this case demonstrates they are not interested in participating in good faith and have in

---

[11] The monetary award the Court recommends *infra* is distinguishable from the lesser sanction of monetary sanctions the Court discusses here. The expense award recommended below is compensatory, required by Rule 37, and flows from the Court's grant of Plaintiff's motion to compel and the sanctions motion for violations of the Court's Orders. In that sense, the award below is not a sanction so much as it is an award of expenses to reimburse Plaintiff as Rule 37 requires.

fact abandoned their case. Staying proceedings only prolongs this already-aged case, would not vindicate the harm Plaintiff has already suffered, and likewise would not ensure compliance with discovery obligations. If a Court Order did nothing to compel compliance, a stay would also be ineffective. This is especially true when the defense here has demonstrated it will not comply regardless of the consequences.

Additionally, the lesser sanction of prohibiting the defense from presenting defenses or "from introducing designated matters in evidence," under Rule 37(b)(2)(A)(ii), would be a cumbersome process and would likely be ineffective anyway. The Court's major concern is that the defense will continue to be absent from this case given its track record to date. Precluding defenses and evidence at trial in the distant future would do little to address what is the overarching problem of the defense's immediate absence from this case. As a practical matter, to impose this sanction, the case has to be at the trial or dispositive motion stages, but this case may never proceed that far if Defendants and Defense Counsel continue to delay or fail to participate at all. Imposing a sanction at some far-off point in the horizon would not only fail to properly address the defense's transgressions to date, it would also fail to motivate the defense to actively participate in this case. After all, if the threat of imminent terminating sanctions did nothing to motivate them to at least defend themselves, a preclusive sanction that would be imposed after the defense actually made an effort and participated in the case would be shrugged off as meaningless. The same can be said for the sanction suggested by Rule 37(b)(2)(A)(i), "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims."

None of these lesser sanctions would address the harm and prejudice suffered by Plaintiff or reasonably ensure Defendants' and Defense Counsel's cooperation in the future. Accordingly, this factor heavily weighs in favor of terminating sanctions.

### 3. Conclusion

While the Court is unable to determine how much, if any, knowledge Defendants personally had regarding the discovery fiasco in this case, the one thing that is certain is

that Defendants Gettel and Conix VRC, LLC were served with a summons and were aware that they were being sued. This was sufficient to trigger their individual attention to this lawsuit and be proactive in defending it. As the Supreme Court has long held, case-dispositive sanctions are still appropriate even if the violative conduct was solely the party's attorney's fault. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 633 (1962);[12] *Maples v. Thomas*, 565 U.S. 266, 280-81 (2012); *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396-97 (1993) (holding that the appellate court erred in *not* attributing an attorney's failure to the client). As the Supreme Court has explained, this is because the party "voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *Link*, 370 U.S. at 633. Accordingly, Defendants bear responsibility for their counsel's conduct, as there is no evidence to support, let alone suggest, that Defendants did anything to prod Mr. Sammartino into action. Nor is there evidence to support, let alone suggest, that they sought Defense Counsel's withdrawal because they were dissatisfied with the lack of progress or pace of this case. Litigation is not a spectator sport where a party retains an attorney and then sits back on the sidelines to watch the action unfold. As Federal Rule of Civil Procedure 1 instructs, parties are as responsible and accountable as their attorney in

---

[12] The Court acknowledges that an exception exists "when an attorney abandons his client without notice, and thereby occasions the default [because h]aving severed the principal-agent relationship, an attorney no longer acts, or fails to act, as the client's representative." *Maples*, 565 U.S. at 281. However, there is no indication that Defense Counsel abandoned Defendants here, as Mr. Sammartino told Plaintiff and the Court that he had been in contact with Defendants all along. Moreover, as Plaintiff's counsel informed the Court at the sanctions hearing, Mr. Sammartino apparently continues to represent "Gettel-related defendants" in state court cases and has appeared on their behalf there. (Hrg. Tr., Doc. No. 52 at 10-11; *see also*, *infra*, nn.18-19.)

ensuring that the Rules are "construed, administered, and employed . . . to secure the just, speedy, and inexpensive determination of every action and proceeding." Defendants and Defense Counsel have collectively failed to abide by this basic mandate.

"At some point, litigation must come to an end. That point has now been reached." *Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1042 (9th Cir. 2011). Defendants have ignored their clear responsibilities under the "[t]he Federal Rules of Civil Procedure [which] exist to move a case forward to disposition, and to do so promptly and expeditiously." *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 790 (9th Cir. 2011). They have failed to do so time and again despite promising the Court they would comply, and they have ignored a direct Court Order compelling their compliance. Their sustained misconduct, failures, and violations amount to willfulness and bad faith. Although "a default judgment sanction is a harsh penalty imposed only in extreme circumstances," *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1169 (9th Cir. 2012) (internal quotations and citation omitted), this case presents such extreme circumstances. Lesser sanctions have been considered and would not adequately address Defendants' serious and pervasive conduct. Only the imposition of the most drastic sanction—default—will address Defendants' continued and rank indifference to the litigation and the Court's Orders. Of the five factors the Court must consider, four factors overwhelmingly favor imposition of terminating sanctions and entry of default judgment. Accordingly, this Court recommends that Plaintiff's motion for terminating sanctions be granted, that Defendants Gettel and Conix VRC, LLC's Answers be stricken, and that a judgment of default be entered.

## B. Payment of Expenses, Contempt, and Reporting to the State Bar

This Court also recommends payment of expenses to Plaintiff by Defendants and Mr. Sammartino, jointly and severally. The Court further recommends initiating criminal contempt proceedings against Mr. Sammartino and reporting to the State Bar of California.

### 1. Payment of Expenses

Two separate expense-shifting provisions in Federal Rule of Civil Procedure 37 apply to this case. First, when a party files a motion to compel compliance with discovery

obligations, the movant must be reimbursed for its efforts in doing so.  Accordingly, Rule 37 provides that once a motion seeking to compel discovery is granted,

> the court *must*, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, *or both* to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.  But the court must not order this payment if:
>> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>> (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A) (emphasis added).  In addition to this provision, when a party *fails to comply* with a court order, the Rules mandate that the "the court *must* order the disobedient party, the attorney advising that party, *or both* to pay the reasonable expenses, including attorney's fees, caused by the failure" instead of or in addition to terminating sanctions.  Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).  The award of expenses under this provision is mandatory unless Defendants and/or their counsel can show that their conduct was "substantially justified" or if "other circumstances make an award of expenses unjust." *Id.*

Here, both of these provisions apply.  First, Plaintiff sought and was granted a Court Order by the former Magistrate Judge that ordered Defendants to respond to Plaintiff's discovery requests.  (Doc. No. 44.)  Thus, at a minimum, Plaintiff is entitled to fees and costs under Rule 37(a)(5)(A).  Plaintiff counsel's itemized billing statements[13] reflect a

---

[13] Plaintiff has provided billing statements which the Court has reviewed.  Plaintiff's attorneys' billing rates, hours expended and costs to pursue the discovery and these sanctions are all reasonable and justifiable.  Those expenses also appear directly related to Plaintiff's efforts in seeking discovery, a motion to compel, and these sanctions proceedings.

total of $4,050 in fees incurred in meet and confer efforts with Defense Counsel, preparation of the motion to compel, and related tasks.

Next, when Defendants and their counsel ignored and failed to comply *in toto* with that Order, Plaintiff filed the instant motion for sanctions. Thus, Rule 37(b)(2)(C) mandates an award of expenses related to the instant sanctions motion, which flows directly from Defendants' violation of the motion to compel. The billing statements show Plaintiff incurred an additional $1,100 in drafting and finalizing the instant motion. That amount appears eminently reasonable given the quality of the motion. Additionally, Plaintiff incurred $1,125 to have attorney Peter Scott travel to, and appear at, the sanctions hearing.[14] This amount is also reasonable given that the Court required Scott to appear in person. In total, Plaintiff incurred $2,225 in expenses necessitated by the instant sanctions motion.

By operation of both mandatory expense-shifting provisions cited above, Plaintiff is entitled to $6,275 in expenses.[15] That is, of course, unless any of the exceptions listed in Rule 37 apply. As explained below, the exceptions do not apply.

### a. Plaintiff Has Acted With Extraordinary Good Faith

Plaintiff has done everything possible to avoid arriving at this point today. From the very beginning, Plaintiff has attempted to work with Defense Counsel informally and cooperatively to obtain the requested documents. For months, Plaintiff dutifully and

---

[14] Mr. Scott represented he was permitted to bill 4 hours of one-way travel time at $250 per hour, but would not permitted to bill his return time. (Hrg. Tr., Doc. No. 52 at 11.) Additionally, the hearing 30 minutes for an additional $125 in expenses.

[15] The Supreme Court recently examined the extent of fee and expense recovery in the context of courts imposing sanctions under their inherent authority "to sanction a litigant for bad-faith conduct by ordering it to pay the other side's legal fees." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. ___, 137 S. Ct. 1178, 1183-84 (2017). In that context, the Court acknowledged that rule-based sanctions regimes, such as Rule 37(b)(2)(C), limit the amount of recoverable fees and expenses to those directly related to, or "caused by," the discovery misconduct. *Id.* at 1186 n.5. Plaintiff has reasonably sought no more than what it incurred directly from Defendants' discovery violations.

painstakingly sought discovery from Defendants through their counsel. Plaintiff graciously and professionally agreed to production extensions all in the hope of receiving even one tidbit of information from Defendants. Along the way, Plaintiff's counsel was often ignored and forced to continually follow up on prior communications. What Plaintiff received in return was more excuses and delays. Even orders of the Court were ineffective in securing the discovery Plaintiff sought to prosecute its case. As detailed above, Plaintiff resorted to the instant sanctions motion after exhausting all other avenues and after giving Defendants and Mr. Sammartino multiple opportunities—met with silence or delay—to fulfill their obligations and promises. Nothing about Plaintiff's course of conduct in this case leads this Court to believe that Plaintiff has acted in anything but good faith before it sought the Order to compel. The "lack of good faith" exception in Rule 37(a)(5)(A)(i) does not apply.

### b. There is No Apparent Justification for the Violations

Because Defendants and their counsel failed to file a response to the sanctions motion and then failed to appear at the hearing, the Court is left with no explanation or justification for their sustained failure to produce discovery or to comply with an Order compelling production. If a justification exists, it is a mystery to this Court, as Defendants and Mr. Sammartino did not take advantage of the ample opportunities the Court provided to explain their conduct. Without any input from Defendants and Mr. Sammartino whatsoever, there is no apparent justification for their violations. The "substantially justified" exceptions in Rule 37(a)(5)(A)(ii) and Rule 37(b)(2)(C) do not apply.

### c. The Court is Unaware of Any Other Circumstances that Would Make an Award of Expenses Unjust

Likewise, the Court is not aware of any other circumstances that would make an award of expenses unjust. Defendants and their counsel were given multiple opportunities to inform the Court of any such circumstances, and they failed to avail themselves of those opportunities. Awarding payment of expenses to Plaintiff is just in this case. In fact, under the circumstances of this case, *not* awarding expenses to Plaintiff would be unjust. Plaintiff

patiently attempted to meet and confer with Defense Counsel for months, gave Defendants and Mr. Sammartino multiple opportunities to comply with their promises to produce discovery, and agreed to jointly ask the Court for multiple extensions of time for Defendants to comply. When none of this worked, Plaintiff was forced to seek, and was awarded, an order compelling Defendants' compliance. When even that did not work and it seemed apparent that Defendants would not comply with their obligations, Plaintiff turned to the final remaining option and filed the motion now pending before the Court. As a result of the lengthy road to the current juncture, Defendants' and Mr. Sammartino's conduct foisted unnecessary expenses upon Plaintiff. Thus, not awarding expenses to Plaintiff would be unjust. The "other circumstances" exceptions in Rule 37(a)(5)(A)(iii) and Rule 37(b)(2)(C) do not apply.

### d. Defendants and Mr. Sammartino Should Pay Expenses Jointly and Severally

The question now becomes upon whom the burden should fall to pay Plaintiff's expenses. Both Rule 37(a)(5)(A) and Rule 37(b)(2)(C) allow the Court to impose the obligation to pay expenses on the disobedient party, the party's attorney, or both. The Court recommends that the entire defense team be made to jointly and severally pay the expenses.

First, Defendants should be liable for payment of expenses because the ultimate responsibility for the conduct of the case rests with them. Even if the delays and failures in this case were Defense Counsel's fault alone, Defendants are nonetheless liable given that their attorneys' actions and conduct are imputed to them. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 633 (1962); *W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1523 (9th Cir. 1990). Moreover, there is some indication that Defendants may have had some responsibility for the delay—though to what extent they were responsible is not

clear.[16] For these two reasons, Defendants should be responsible for payment of expenses. However, they should not be solely responsible given Mr. Sammartino's conduct in this case.

Other than Defense Counsel's self-serving emails that he had either talked to his clients who were in the process of obtaining the records or that his clients were being aloof, there is no evidence before this Court to indicate that the failure to provide discovery lies exclusively at Defendant's feet to the exclusion of Mr. Sammartino's own disengagement and dilatory conduct. Defense Counsel personally strung Plaintiff's counsel along for months with promises of imminently forthcoming discovery.[17] These pronouncements were damning for Defense Counsel because after months of pledging that documents would be produced, nothing happened and no plausible explanation was given. The best that can be said is that Mr. Sammartino was not working diligently—or at all—and that production was never imminent. The worst that can be said is that Mr. Sammartino was intentionally deceptive. Neither scenario favors Mr. Sammartino.

Additionally, the Court granted the parties extensions of time based, in part, on Defense Counsel's personal representations and promises. Along the way, Defense

---

[16] Although there is *some* indication, it is fleeting. It may be the case that Defense Counsel was having difficulty communicating with Defendant Gettel as he stated in his March 23, 2017 email to Plaintiff's counsel. (Doc. No. 42-3, Ex. T.) But this was the first time Mr. Sammartino hinted that his clients may be the problem. Up to this point and for the previous ten months, Defense Counsel's emails never even suggested that there were attorney-client communication problems. For example, in an email dated July 1, 2016, Defense Counsel stated that "[his] clients are willing to provide the information requested below." (Doc. No. 42-3, Ex. B.) In an email dated January 19, 2017, Defense Counsel stated that he wanted to consult with his clients again but that [Plaintiff] should have everything by tomorrow at the latest." (Doc. No. 42-3, Ex. G.) And in a status call with the original Magistrate Judge on February 28, 2017, Defense Counsel represented that the discovery responses would be provided in two weeks. (Doc. Nos. 40; 42-3, Ex. Q.)

[17] *See, e.g.*, Doc. 42-3, Ex. E ("I am supposed to be close on the ones that had accounts."); Ex. G ("[Plaintiff] should have everything by tomorrow [January 20, 2017] at the latest.").

15-CV-2288-BAS(WVG)

Counsel repeatedly broke those promises with little, if any, real explanation. And, if any explanation absolving Mr. Sammartino exists, he chose to ignore the last opportunity he had to provide them when he failed to appear at the sanctions hearing.[18] If Defense Counsel was having client control problems that caused any of the delay or failures in this case, he simply could have explained as much to the Court either by filing *something* as the sanctions briefing Order required or appeared at the sanctions hearing and informed the Court of any difficulties. Mr. Sammartino did neither. What remains, then, is Defense Counsel's history of personally assuring Plaintiff and the Court that discovery was forthcoming and then failing to produce anything. Accordingly, Defense Counsel's conduct contributed to the delay in this case and the violations of the Court's Order compelling discovery. He should therefore also be liable for the expenses Plaintiff incurred in seeking the Order to compel and these sanctions proceedings that flowed from the violation of that Order.

Based on the foregoing, Defendants and Mr. Sammartino should be jointly and severally liable and responsible for payment of $6,275 in expenses. *See Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1223 (W.D. Wash. 2014) (imposing $15,695.00 Rule 37(b)(2)(C) sanctions jointly and severally upon defendants and their counsel); *Paige v. Consumer Programs, Inc.*, 248 F.R.D. 272, 278 (C.D. Cal. 2008) (imposing $15,695.00 Rule 37(a)(5)(A) sanctions jointly and severally upon plaintiffs and their counsel).

---

[18] Defense Counsel appears to have been active in other cases related to this litigation. According to attorney Scott, the last communication Plaintiff's attorneys had with Defense Counsel in relation to this case was in an email dated March 23, 2017. (Doc. No. 42-3, Ex. T.) However, Mr. Scott stated that he represents clients in state court actions against "Gettel-related defendants" who are represented by Defense Counsel in those actions. (Hrg. Tr., Doc. No. 51 at 10.) As recently as a month before the July 14 sanctions hearing, Mr. Scott appeared at a state court hearing at which Defense Counsel also appeared. (*Id.*)

15-CV-2288-BAS(WVG)

## 2. Criminal Contempt Proceedings

Left with no other option in the face of Mr. Sammartino's continued violations of Court Orders and failure to appear at the sanctions hearing, this Court recommends initiation of criminal contempt proceedings to vindicate the authority of the Court and punish his completed acts of disobedience.

### a. Legal Standard: Civil and Criminal Sanctions

Federal Rule of Civil Procedure 37(b)(2)(A)(vii) permits the Court to treat "as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." There are two types of contempt sanctions, and the question here is which contempt proceeding is most appropriate.

A court's contempt powers are broadly divided into two categories: civil contempt and criminal contempt. "The difference between criminal and civil contempt is not always clear. The same conduct may result in citations for both civil and criminal contempt." *United States v. Rylander*, 714 F.2d 996, 1001 (9th Cir. 1983) (citation omitted). In distinguishing between criminal and civil contempt, courts must look to the sanction's "character and purpose." *Int'l Union, UMWA v. Bagwell*, 512 U.S. 821, 827 (1994). "The purpose of civil contempt is coercive or compensatory, whereas the purpose of criminal contempt is punitive." *Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, 539 F.3d 1039, 1042 (9th Cir. 2008). The civil contemnor is said to "carr[y] the keys of his prison in his own pocket," whereas the criminal contemnor "is furnished no key, and he cannot shorten the term by promising not to repeat the offense." *Bagwell*, 512 U.S. at 828-29.

### i. Civil Contempt

"Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986). "Compensatory awards are limited to 'actual losses sustained as a result of the contumacy.'" *Id.* (emphasis omitted). When considering a coercive fine to make a defendant comply with a court order, the court should consider "'the character and

magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired.'" *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 516 (9th Cir. 1992) (quoting *United States v. United Mine Workers*, 330 U.S. 258, 304 (1947)).

The civil contempt power of a magistrate judge are as follows:

> Upon the commission of any such act . . . where . . . the act constitutes a civil contempt, the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified.

28 U.S.C. § 636(e)(6)(B)(iii). The assigned district judge then hears the evidence to determine whether the conduct warrants punishment and may impose contempt sanctions in the same manner and to the same extent as for a contempt committed before the district judge. *See id.*; *see also In re Kitterman*, 696 F. Supp. 1366, 1370 (D. Nev. 1988).

## ii. Criminal Contempt

A basic proposition exists that "all orders and judgments of courts must be complied with promptly." *Maness v. Meyers*, 419 U.S. 449, 458 (1975). "Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect." *Id.*

Whether "contempt is civil or criminal turns on the nature of the sanction" involved. *Kelly v. Wengler*, 822 F.3d 1085, 1097 (9th Cir. 2016). "The test . . . is what does the court primarily seek to accomplish by imposing the sanction?" *Shell Offshore, Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016) (internal quotations and citation omitted). While civil contempt is remedial and for the benefit of the opposing party, criminal contempt is punitive and designed to vindicate the authority of the court and punish the contemnor. *See, e.g.*, *Int'l Union, UMW v. Bagwell*, 512 U.S. 821, 827-28 (1994); *United States v. Doe*, 125 F.3d 1249, 1256 (9th Cir. 1997); *In re Sequoia Auto Brokers*, 827 F.2d 1281, 1283 (9th Cir. 1987). "A criminal sanction . . . generally seeks to

punish a 'completed act of disobedience.'" *Ahearn ex rel. N.L.R.B. v. Int'l Longshore & Warehouse Union, Locals 21 & 4*, 721 F.3d 1122, 1129 (9th Cir. 2013) (quoting *Bagwell*, 512 U.S. at 828).

"Criminal contempt is established when there is a clear and definite court order, the contemnor knows of the order, and the contemnor willfully disobeys the order." *United States v. Doe*, 125 F.3d 1249, 1254 (9th Cir. 1997) (internal quotations and citation omitted).

A magistrate judge's authority with respect to criminal contempt is primarily divided into two types. First, when contemptuous behavior occurs "in the magistrate judge's presence so as to obstruct the administration of justice," a magistrate judge has the power to invoke summary criminal contempt sanctions. 28 U.S.C. § 636(e)(2). Second, when contemptuous behavior occurs outside the presence of the magistrate judge, a magistrate judge may certify such facts to the district judge and order the contemnor to appear for a show cause hearing. 28 U.S.C. § 636(e)(6)(B)(ii).

### b. Discussion

Here, criminal contempt proceedings are most appropriate because the nature and intent of the contempt sanctions recommended are to vindicate the authority of the Court and punish Defense Counsel in the face of his continued failures which have ultimately resulted in defiance of court orders. Mr. Sammartino has violated *four* Orders of the Court, all of which up to this point have gone unpunished. Most egregiously, Mr. Sammartino failed to appear at the sanctions hearing after this Court expressly ordered him to appear.

First, the original Magistrate Judge issued a scheduling order setting March 7, 2017, as the deadline for fact discovery. Plaintiff propounded formal requests for production of documents on January 25, 2017. Defendants' responses were due by February 14, 2017. When no production occurred, Plaintiff requested a status conference with the original Magistrate Judge which occurred on February 28, 2017. The Magistrate Judge granted an extension of time to complete fact discovery after Defense Counsel promised to provide

responses to Plaintiff's request in two weeks' time. Still Defense Counsel violated the Scheduling Order when he failed to provide any response.

Second, Defendants and their counsel continued to fail to provide responses even after the original Magistrate Judge granted Plaintiff's motion to compel discovery and expressly ordered them to do so. To date, Plaintiff has received no discovery.

Third, this Court ordered Defendants and their counsel to respond to Plaintiff's motion for sanctions. (Doc. No. 47 ¶ 1 ("Defendants *and defense counsel shall* jointly file a . . . response/opposition to each and every allegation lodged against them collectively *and individually* by Plaintiff in the pending sanctions motion . . . .") (emphasis added). Although Plaintiff's sanctions motion was replete with accusations against Defense Counsel individually, Mr. Sammartino filed nothing in response to those allegations.

Finally, this Court expressly ordered Mr. Sammartino to appear at the sanctions hearing. (Doc. No. 47 ¶ 3 ("**Defense counsel and all individual and representative Defendants are ordered to appear in person.**") (emphasis in original).) Such an express, direct order left no doubt that Defense Counsel's personal appearance was mandatory. But Mr. Sammartino failed to appear.[19]

---

[19] This Court has no reason to believe that Mr. Sammartino has not received any of the filings in this case. In this District, all attorneys are required to register as electronic filers and accept service of case filings electronically via the Court's Electronic Case Filing System. S.D. Cal. Civ. L. R. 5.4(a). Documents filed on the Court's electronic docket are deemed served upon all parties through their registered filer attorneys. *Id.* § 54(c). Mr. Sammartino has registered his email address with the Court, and that email address is identical to the address reflected on Defense Counsel's State Bar member profile as well as his firm's website. Additionally, attorney Scott informed the Court that Defense Counsel had been active in related state court cases and made an appearance in those cases as recently as a month before the sanctions hearing. Thus, the inference this Court draws is that Mr. Sammartino is available, has chosen to participate and make appearance in related state court matters, and has consciously elected for unknown reasons to ignore proceedings in this case as well as disregard this Court's orders.

When considering which type of contempt—civil or criminal—is appropriate in this case, Defense Counsel's conduct convinces this Court that civil contempt sanctions are not the proper sanction and would not be effective in gaining Mr. Sammartino's compliance for three reasons. First, as a practical matter, given the recommendation above for imposition of terminating sanctions, it is now moot whether Defense Counsel should be compelled to comply with the former Magistrate Judge's discovery order and actually produce some discovery. Given the recommendation that a judgment of default be entered, civil contempt to compel production of discovery now would be a pointless exercise. Second, even if discovery production was not futile, Mr. Sammartino's course of conduct strongly foretells that civil contempt proceedings will not have the intended effect of gaining compliance. This is because even when faced with the litany of allegations against him personally in Plaintiff's sanctions motion and Plaintiff's request for monetary sanctions, Defense Counsel did nothing. If these great consequences had no impact on him to this point, additional sanctions in the form of monetary civil contempt sanctions will likewise continue to have no impact. Finally, civil contempt is not necessary to compensate Plaintiff for losses sustained as a result of the contemptuous conduct because Rule 37 contains two applicable reimbursement provisions, and this Court has recommended reimbursement of Plaintiff's actual losses under those provisions. Ultimately, given the above, the intent and purpose of civil contempt do not fit the circumstances of this case.

Rather, this Court recommends criminal contempt proceedings because the nature of the contemptuous conduct is completed acts of disobedience of the Court's Orders and open disregard of the Court's authority. As a result, the intended purpose of the sanction is to vindicate the authority of the Court, which has to this point been flouted by a member of the State Bar and an officer of the court. This sanction is also necessary to punish the contemnor for this disobedient conduct. All of the circumstances discussed in detail above, including most egregiously Defense Counsel's recent flouting of direct court orders and failure to appear as expressly ordered, amounts to open, intentional defiance of the Court's authority. The Court simply cannot tolerate or ignore such conduct from an officer of the

court. Because the purpose of any contempt sanction at this stage would be to punish Defense Counsel's completed acts of disobedience—rather than to compensate Plaintiff or coerce compliance with a court order—criminal contempt proceedings are appropriate.

### 3. Reporting to the State Bar of California

California Business and Professions Code § 6068(o) requires attorneys to self-report imposition of judicial sanctions of $1,000 or more. Given Mr. Sammartino's conduct and failure to comply with court orders in this case, the Court should direct the Clerk of Court to forward a copy of the Court's final order to the State Bar of California to ensure that the reporting is completed.[20]

## IV. CONCLUSION

This Court RECOMMENDS that Plaintiff's motion for terminating sanctions be GRANTED. Accordingly, this Court further RECOMMENDS that the Court (1) strike Defendants Gettel and Conix VRC, LLC's Answers, (2) enter default judgment in favor of Plaintiff, and (3) impose $6,275 in payment of expenses, to be paid jointly and severally by Defendants and Defense Counsel. Additionally, the undersigned Magistrate Judge certifies the facts above pursuant to 28 U.S.C. § 636(e)(6), recommends criminal contempt proceedings against Defense Counsel. This Court further RECOMMENDS that a final Order sanctioning Defense Counsel be forwarded to the State Bar of California by the Clerk of Court.

This Report and Recommendation is submitted to the United States District Judge assigned to this case pursuant to the provisions of 28 U.S.C § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

_____

[20] The Order may be sent to the following contact point at the State Bar's Office of Chief Trial Counsel:      Cecelia Horton-Billard, Esq.
                                    State Bar of California Intake Unit
                                    845 S. Figueroa Street
                                    Los Angeles, CA 90017

**IT IS ORDERED** that **no later than August 22, 2017**, any party to this action may file written objection with the Court and serve a copy on all parties. The document shall be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the court and served on all parties **no later than August 29, 2017**. The parties are advised that failure to file objections within the specific time may waive the right to raise those objections on the appeal.

**IT IS SO ORDERED.**

DATED:  August 7, 2017

Hon. William V. Gallo
United States Magistrate Judge

15-CV-2288-BAS(WVG)